Thank you. May I please include, my name is Alex Kortinsky. I represent the petitioner and appellant, Mark Yeglaryan. I'd like to reserve two minutes of my rebuttal time. I understand that I have to keep track of that. You may do it. Thanks. Mr. Yeglaryan was found credible by the immigration judge and granted withholding of removal. The Board of Immigration Appeals did not reverse that credibility finding, but did reverse the grant of withholding of removal, primarily on the basis that the Board of Immigration Appeals found that he did not show past or future persecution. And Mr. Yeglaryan contends that there wasn't a reasonable, substantial, or probative evidence from which the BIA could have overturned the immigration judge's decision. And the primary mistakes that we contend that the Board of Immigration Appeals made was, number one, they focused primarily on the testimony that Mr. Yeglaryan gave at the individual hearing. And the second mistake would have been requesting corroboration in this particular case. Now, turning to the first point, Mr. Yeglaryan, again, testified credibly, represented himself both at the individual hearing, or the merits hearing, as it's also called, and also in the BIA appeal. Now, in that hearing, again, without counsel, Mr. Yeglaryan submitted evidence vis-a-vis questions that were posed to him both by the immigration judge and the Department of Homeland Security. He responded primarily to the questions that were asked, and at that point he was asked to sit down and submit to cross-examination. And at no time during that individual hearing was he asked, do you want to add anything else on yourself? What evidence did he offer that he would be persecuted in the future? Well, the future persecution claim stems from several things. Number one, the country condition reports. No, what evidence did he offer that he would be persecuted? He offers the evidence in terms of, after he left, and just before he left in 2004, he submitted a letter in which he details everything that's happened to him and his family. No, in the future, not what had happened, but what would happen to him. Well, we know what would happen to him based on the testimony of what happened to his mother. The police came, they took her passport, from which now they also took her apartment. His mother was somebody different. What evidence that he would be persecuted? Well, the fact that he would continue doing his political activities. He never indicated that he was no longer going to do that. And, again, once he established that he was persecuted in the past, he was entitled to a rebuttable presumption that he wouldn't be persecuted in the future. And the Department of Homeland Security made no effort whatsoever to address that issue. In fact, the country condition reports at the time that were submitted fully supported the fact that there was persecution of political opponents. And Mr. Yeglorian testified that he submitted a letter to the opposition party representative, which at that time was Artashis Geghamian. And based on that letter, authorities actually came looking for him. Now, this is after Mr. Yeglorian had already left the country. So what acts of persecution did he suffer? He suffered several acts, both himself and his family. We know that he was arrested twice. How long was he kept? The first time he was kept for an hour. Is that persecution? By itself, no. But when you're entitled with everything else that happened, for instance, being questioned and interrogated by the KGB, which is the national security agency of Armenia. It wasn't just a local police asking him questions. He was actually interrogated about his whereabouts, his political connections, who he supports. And then he was beaten during that incident. How badly? Well, that's one of the issues. There was no testimony taken from him directly on what kind of beating he sustained. Well, why wasn't there? Because the immigration judge simply did not ask him. The government attorney did not ask him. And he was never asked. Well, why didn't he volunteer it? He was never given that opportunity, Your Honor. What do you mean? He's testifying. He was testifying in a hearing in which the immigration judge is controlling the hearing. And if you look at the administrative record, for instance, on page 185, which is the end of the hearing, excuse me, the end of the direct examination, the immigration judge doesn't ask him, okay, is there anything you want to add? Is there anything that you would like me to know about your case? She simply says, okay, cross-examination now. At what point did he get counsel? I'm sorry, Your Honor? At what point did he get counsel? He got counsel essentially when he was detained after he failed to receive the denial of the BIA appeal that was concerned. So he was detained by the authority several months later, and we were able to prove that he never received that decision and never filed a petition for review. So the BIA then allowed him, reissued the decision to allow him to petition this court for review of the matter. So that's when you came into the picture. That's correct. And during the time there was a cross-appeal that was filed by the department with regard to the grant of the withholding. What, in your view, do we have to find in order to make the reversal? I'm sorry, Your Honor? What, in your view, must this court find in order to reverse as you're asking us to do? The court should find that the evidence on a whole and the totality of the circumstances of everything that's happened, not only focusing on what happened to him at the individual hearing, but also focusing on the entire record, which includes his declaration and the asylum application. The declaration includes a lot more evidence about what happened to him for which he was not asked about. And that's one of the key issues with the BIA. They focus solely on what he said at the individual hearing in response to the questions by the immigration judge and cross-examination. Whose burden is it to make the record, in your view? The burden to make a record is on the respondent always. However, this court has shown some leniency in the past when there's a pro per or in pro se respondent that is in front of a proceeding. And in light of the circumstances of the hearing, too, where he is basically submitting to the authority of the court, the court is telling him, that's all I need to hear from you. He is assuming that his declaration is going to be part of this case. Now, turning to the second issue, which is the corroboration issue. Well, the immigration judge found him credible, so corroboration by itself wasn't necessary. But the second issue with that is that there is no evidence whatsoever that he could have obtained corroboration. We know that, for instance, his mother was ill, both in 2005 and 2000. He didn't lose this case, though, on the failure to corroborate. He lost it on the basis that it wasn't considered. He didn't make a sufficient showing. Isn't that true? Well, we know he won withholding in front of the judge. The judge heard his case, read his case, and decided on those bases. We know that the BIA said, well, based on what you testified in court, there wasn't enough, and besides, you should have corroborated this case. But the corroboration requirement, first of all, should not have been the threshold for the case, and there's no evidence that he could have obtained. The only document that we talked about at the individual hearing, he indicated he doesn't have, which was the letter discharging him from the school. I'm going to reserve the last minute for rebuttal. Thank you. Good morning, Your Honor. Excuse me. Good morning, Your Honors, and may it please the Court. Imran Zaidi for the respondent. Your Honors, the question before the Court is whether substantial evidence supports the agency's denial of asylum and withholding of removal based on two grounds. First, the petitioner's asylum request was untimely and without exception, and second, the petitioner failed to demonstrate a clear probability of persecution to qualify him for withholding of removal. Now, turning first to the untimely asylum request, the Court's review here is limited to constitutional claims and questions of law. Now, petitioner sets forth a few, a couple due process-related arguments. First, that the agency improperly overlooked some of his evidence regarding his marriage to a United States citizen, and second, the petitioner, that the immigration judge failed to consider some of his witness testimony. Now, petitioner's claim is that his marriage to a United States citizen constituted extraordinary circumstances to excuse his untimely asylum request. But, Your Honors, the two due process-related arguments petitioner raises here, there is simply no basis to them. Both the immigration judge and the Board fully considered petitioner's evidence and simply determined that it did not amount to extraordinary circumstances to excuse his untimely asylum request. Now, petitioner, notably, has identified nothing in the record to suggest otherwise, has identified nothing to suggest that the agency overlooked any of his evidence, and that's particularly important where there is a presumption of agency review that has simply not been rebutted here. Now, as to the excluded witness, Your Honors, it's not that the immigration judge excluded a witness, it's that petitioner simply never called one. The record is very clear on this. Petitioner fully testified in support of his claims, in fact called one of his witnesses, and simply never called another witness. There's no instance that he points out in the record where he tried to call a witness and the immigration judge denied him that opportunity. Now, petitioner, as Your Honors just referenced, petitioners did ultimately bear the burden of proving eligibility for relief and protection here. That burden doesn't change just because petitioner is proceeding pro se. Now, turning to the withholding claim, Your Honors, the crux of the withholding claim, the crux of the BIA's denial here is that petitioner failed to demonstrate his past experiences relative to the level of persecution. Now, Your Honors, petitioner's experiences are that, and while unfortunate, they simply do not rise to the extreme level of persecution. He alleges that on one occasion he was taken by police officers from his home. He was interrogated for approximately an hour. He alleges generalized physical harm. He doesn't give any specific details and doesn't allege any injuries arising out of this incident. Now, the other incident, petitioner alleges that he was detained for approximately one day and struck on the back with a baton prior to this detention when he was apprehended at a pre-election meeting. Again, no injuries alleged out of this injury, and the only harm alleged was being struck on the back with a baton. Your Honors, that is the core of petitioner's past experiences here. Now, under this court's jurisprudence, it's well settled that persecution is an extreme concept that simply does not involve every sort of treatment society regards as offensive. And so, for example, the court has held that when an individual is summoned to a police station more than four times and later threatened on account of their religion, it amounts not to persecution but to harassment. That's this court's Hulain v. Ines decision in 2004. Even when there are allegations of more severe harm, such as Kumar v. Gonzalez, the court's 2006 decision, in that decision, petitioner's home was invaded by soldiers. He was kicked and punched in the stomach and face and later detained overnight while having his head hit on the wall. Again, Your Honors, the court found that those experiences simply did not rise to the extreme level of persecution. So we believe it does not diminish petitioner's unfortunate experiences here to suggest that this simply don't rise to the extreme level of persecution. Now, Your Honors, I'd like to briefly address future harm here as well. Petitioner raises, and I believe Judge Noonan, you were asking what exactly petitioner raises in respect to future harm. Two allegations. First, that his mother's passport was taken away. And second, that in April of 2005, two unidentified individuals asked his mother of his whereabouts. That's it. Now, importantly, the burden here is withholding removal. Asylum is already untimely. So the burden for withholding removal is clear probability. That's a likelihood of future harm, not the well-founded fear for asylum, a much lower standard. Now, under those circumstances, with this high burden, those two allegations absolutely do not meet petitioner's burden here, and they certainly don't meet his burden on the standard of review here of the record compelling the conclusion that there's a clear probability of future persecution. Your Honors, one last thing I'd like to briefly address with regard to petitioner's past experiences. Petitioner claims that his uncle was killed in Armenia, and that's one of the kind of more severe claims in this persecution. But frankly, Your Honors, there's simply nothing in the record to suggest anything more than that his uncle died. Petitioner himself doesn't know anything more than that. He testified he did not want to accept the fact that it was an accident, his uncle was in a car accident, that much we know. He doesn't have any evidence to suggest that his uncle was killed. The only person who purportedly has this evidence is a neighbor from whom we have no testimony, no statement, sworn or otherwise. And petitioner himself concedes that his uncle has no affiliations with any organization, no political involvements, nothing to suggest the government would target him for any reason. Your Honors, under these circumstances, we have an asylum request that's untimely, and there's simply very little constitutional claim here to excuse that untimely submission. And then we have basically a withholding claim based on past experiences which, though unfortunate, simply do not rise to the level of persecution contemplated by this court or the INA. We therefore ask that the court deny this petition for review. Thank you very much, counsel. We'll hear rebuttal. Thank you, Your Honor. The case lies cited by the government in page 43 actually all supports the respondent's case. We know that, first of all, physical violence by itself is not required for the respondent to meet the past persecution burden. In this case, he was physically harmed on two occasions. His mother was harmed. She was almost suffocated.  Sorry, Your Honor? You don't want to overstate it, do you? We know he's... When you overstate, that says to the Court on Appeals there's not enough in the record. We have to add a little bit to it in order to win our point. The declaration says I was beaten on both occasions. I was also thrown to the ground and held on... You were struck once in the back. Isn't that the allegation? Well, that's what came out in the, again, individual hearing. It was not necessarily limited to what's on the record. And then, again, the cumulative effect not only of what happened to him but also his mother, who was suffocated, all of those in... Suffocated for counsel. That's part of the declaration, Your Honor, that he submitted on... What we know on this record is that the mother's passport was taken from her. Isn't that what we know on the record? On the individual hearing, we're arguing that the record includes a declaration in which he indicates on the declaration, which is part of the administrative record on 241, indicates that they suffocated her with a pillow and forcing her into restraining her while they arrested him in the April 12th incident. Thank you, Your Honor. Thank you. The case just dogged is submitted.
judges: Farris, Noonan, Bybee